Matter of Daniel D. (Tara D.) (2024 NY Slip Op 05665)

Matter of Daniel D. (Tara D.)

2024 NY Slip Op 05665

Decided on November 15, 2024

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 15, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: LINDLEY, J.P., BANNISTER, OGDEN, GREENWOOD, AND HANNAH, JJ.

607 CAF 22-01876

[*1]IN THE MATTER OF DANIEL D. MONROE COUNTY DEPARTMENT OF HUMAN SERVICES, PETITIONER-RESPONDENT; TARA D., RESPONDENT-APPELLANT, AND ADAM D., RESPONDENT.

JULIE CIANCA, PUBLIC DEFENDER, ROCHESTER (GUY A. TALIA OF COUNSEL), FOR RESPONDENT-APPELLANT.
JOHN P. BRINGEWATT, COUNTY ATTORNEY, ROCHESTER (MARY M. WHITESIDE OF COUNSEL), FOR PETITIONER-RESPONDENT. 
MARY HOPE BENEDICT, BATH, ATTORNEY FOR THE CHILD. 

 Appeal from an order of the Family Court, Monroe County (Joseph G. Nesser, J.), entered October 13, 2022, in a proceeding pursuant to Family Court Act article 10. The order, among other things, adjudged that respondents abused the subject child. 
It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.
Memorandum: Respondent mother appeals from an order adjudging that respondents abused their four-month-old son, Daniel, who was found to have nondisplaced fractures in six ribs and both legs. Following an evidentiary hearing, Family Court determined that petitioner established by a preponderance of the evidence that respondents caused the injuries and thereby abused Daniel within the meaning of Family Court Act § 1012 (e) (i). Although respondent father also filed a notice of appeal, he failed to perfect his appeal. The mother contends that the evidence is legally insufficient to support the court's finding of abuse and that there is no sound and substantial basis in the record for the court's finding of parental culpability. We reject both of those contentions.
Petitioner presented evidence that, once Daniel was discharged from the neonatal intensive care unit, respondents were the sole caretakers of Daniel, with the exception of two nights in July and August when other relatives cared for him. On September 11, 2021, when Daniel was four months old, the mother took him to the doctor because Daniel had been exhibiting "extreme fussiness" for three days and appeared unable to put any weight on his legs. Imaging conducted at the hospital established that Daniel had a fracture of his right distal femur, which is the thigh bone near the knee, and another fracture of the left proximal tibia, which is the shin bone. He also had fractures in two ribs on the left side as well as several older fractures of ribs on the right side.
While at the hospital, Daniel was examined by a doctor who was board certified in child abuse pediatrics. She determined that the fractures were of the hairline variety and that the rib fractures had "callus around them," suggesting that they were at least 7 to 14 days old. There was no callus forming in the legs and, as a result, the doctor could not provide a timeline for those injuries. Blood tests showed that Daniel had a normal level of calcium, magnesium, phosphorous, parathyroid hormone, and vitamin D, indicating that there was nothing wrong with his bones. The tests also showed mildly elevated liver enzymes. Because respondents offered no explanation for how the injuries occurred, the doctor suspected child abuse and reported respondents. Petitioner thereafter filed a petition against respondents alleging abuse and neglect.
At the evidentiary hearing, the doctor testified regarding her findings, and petitioner's investigator also testified regarding petitioner's investigation into the case, i.e., that there was no evidence of any accidental cause for the injuries and no evidence of any bone disorder that could have been a cause of the injuries.
Respondents, testifying on their own behalf, provided hypothetical explanations for the injuries, such as that they were caused by visits to a chiropractor, and admitted that they were Daniel's only caretakers, except for two days, one of which did not coincide with the onset of most of the injuries. Neither respondent sought to blame the other for the injuries. Respondents also called an out-of-state pediatrician as an expert witness. The expert witness opined that Daniel's injuries were more likely caused by a metabolic bone disease, the fact that the mother had diabetes during her pregnancy and took magnesium for her preeclampsia, or the fact that Daniel was born several weeks premature and was taking Pepcid. According to the expert, any or all of those issues would explain why Daniel was likely born with lower bone density and therefore lower bone strength, which could have resulted in injury due to minimal force. He thus opined that the fractures were the result of Daniel having fragile bones. Notably, however, Daniel did not sustain any additional fractures after he was placed with a relative, and respondents stated that Daniel had not exhibited any symptoms of pain until the days before the mother took him to the doctor.
The primary issue at the evidentiary hearing was causation, i.e., whether respondents caused Daniel's injuries or whether there was some innocent explanation for the fractures. The court credited petitioner's expert inasmuch as there was no evidence that Daniel did, in fact, have a bone disorder and there was no evidence of additional injuries after Daniel was removed from respondents' home, as one would have expected if he had a bone disorder or other basis for fragile bones. 
Family Court Act § 1012 (e) (i) provides that a child is abused when the parent or other legally responsible adult "inflicts or allows to be inflicted upon such child physical injury by other than accidental means which causes or creates a substantial risk of death, or serious or protracted disfigurement, or protracted impairment of physical or emotional health or protracted loss or impairment of the function of any bodily organ" (emphasis added). The mother contends that, inasmuch as Daniel recovered quickly, the injuries that were inflicted did not constitute the requisite serious physical injuries. The mother, however, failed to preserve that contention for our review inasmuch as she failed to raise that contention before the court (see Matter of Adonnis M. [Kenyetta M.], 194 AD3d 1048, 1052 [2d Dept 2021], appeal dismissed 37 NY3d 1128 [2021]; Matter of Lea E.P. [Jason J.P.], 176 AD3d 715, 716 [2d Dept 2019]; Matter of Jaydalee P. [Codilee R.], 156 AD3d 1477, 1477 [4th Dept 2017], lv denied 31 NY3d 904 [2018]).
In any event, we conclude that the contention lacks merit inasmuch as the "injuries were 'clearly inflicted and not
accidental' " (Matter of Jonah B. [Ferida B.], 165 AD3d 787, 789 [2d Dept 2018]), and those injuries "create[d] a substantial risk" of much more serious injuries (Family Ct Act § 1012 (e) (i) [emphasis added]; see Matter of Addison M. [Bridgette M.], 173 AD3d 1735, 1736-1737 [4th Dept 2019]; Jonah B., 165 AD3d at 789). "[U]nder the Family Court Act, a 'child need not sustain a serious injury for a finding of abuse as long as the evidence demonstrates that the parent sufficiently endangered the child by creating a substantial risk of serious
injury' " (Jonah B., 165 AD3d at 789).
The mother further contends that the evidence is legally insufficient to establish that she inflicted or allowed to be inflicted those injuries to Daniel. We have repeatedly upheld abuse findings in similar situations (see e.g. Matter of Avianna M.-G. [Stephen G.], 167 AD3d 1523, 1523-1524 [4th Dept 2018], lv denied 33 NY3d 902 [2019]; Matter of Tyree B. [Christina H.], 160 AD3d 1389, 1389 [4th Dept 2018]). Where, as here, petitioner submits " 'proof of injuries sustained by [the] child . . . of such nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent,' i.e., multiple fractured ribs [and legs] in various stages of healing," that constitutes a prima facie case of abuse (Avianna M.-G., 167 AD3d at 1523, quoting Family Ct Act § 1046 [a] [ii]). The " 'presumption of culpability [created by section 1046 (a) (ii)] extends to all of a child's caregivers, especially when they are few and well defined, as in the instant case' " (id. at 1524). We agree with the court that the mother failed to rebut the presumption that she and the father, as Daniel's parents and sole caregivers, were [*2]responsible for his injuries (see id.).
For the same reasons, we reject the mother's contention that the finding that she caused the injuries is not supported by a sound and substantial basis in the record (see generally Family Ct Act § 1046 [b] [i]; Matter of Zakiyyah T. [Lamar R.], 221 AD3d 1443, 1445 [4th Dept 2023], lv denied 41 NY3d 901 [2024]). With respect to that issue, the court was presented with a battle of medical experts, one called by each side. Petitioner's expert testified that Daniel's numerous bone fractures could have been caused only by non-accidental trauma, while the mother's expert testified that the fractures were more likely caused by metabolic bone disease. Based on our review of the record, it cannot be said that the court erred in crediting the testimony of petitioner's expert, especially considering the fact that Daniel did not sustain any more fractures after he was removed from respondents' home and placed with a relative pending trial, which commenced more than nine months following removal.
Entered: November 15, 2024
Ann Dillon Flynn
Clerk of the Court